UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| KERRY ROSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:24-cv-00057-LEW |
| | ) |
| MORGAN POLKY, TRACY CLARK, | ) |
| MAINE DEPARTMENT OF | ) |
| HEALTH AND HUMAN SERVICES, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTION TO DISMISS

In this action, Plaintiff Kerry Ross alleges that Defendant Morgan Polky violated his constitutional rights by sexually assaulting and harassing him while serving as his case worker in a parental reunification context. Ross also brings to this action Defendant Tracy Clark and the Maine Department of Health and Human Services ("DHHS"), claiming they bear responsibility for Polky's alleged misconduct. Defendants Clark and DHHS have filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 8). For the reasons that follow, their Motion will be granted.

### BACKGROUND

The background is drawn from Plaintiff's Complaint (ECF No. 1). The factual allegations are regarded as true for the purposes of the Motion to Dismiss.

Plaintiff Kerry Ross is a parent. In December 2017, Ross's children were taken into protective custody. The children were assigned a guardian ad litem and Ross began the reunification process. Pl.'s Compl. ¶¶ 5-6. Defendant Morgan Polky was a DHHS social

worker and the caseworker assigned to Ross's family. *Id.* ¶¶ 13-14. Defendant Tracy Clark was a DHHS employee and was Polky's supervisor.

Twice during Polky's oversight of Ross's case, the guardian ad litem emailed Polky and her supervisor requesting documentation on Ross's progress toward reunification. *Id.* ¶¶ 49, 125. In 2017, DHHS's policy required caseworkers to log their contact with their assigned families into the narrative log of the Maine Automated Child Welfare Information System ("MACWIS"). *Id.* ¶ 15. DHHS policy also required the caseworkers' supervisors to enter changes in the parents' visitation schedule into the narrative log. *Id.* ¶ 37.

As alleged, over the course of three months, Polky and Ross contacted each other via text, calls, and in-person meetings. Most of these contacts were not recorded in MACWIS. Certain changes to the visitation schedule were also not recorded in MACWIS. *Id.* ¶¶ 38, 59. Some interactions between Ross and Polky were benign, such as coordinating transportation for Ross. *See, e.g., id.* ¶¶ 50-53. Other instances included exchanging sexually explicit photos and, in one instance, having intercourse in Polky's government car. *Id.* ¶¶ 222-23, 299-301. Ross states that he participated in these acts only due to his fear of Polky's power over the reunification process. *Id.* ¶ 302.

In his Complaint, Ross asserts claims against Polky under the Maine Tort Claims Act ("MTCA") and 42 U.S.C. § 1983 alleging battery, assault, and deprivation of constitutional rights. *Id.* ¶¶ 310-36. Ross also brings the 42 U.S.C. § 1983 claim but not

the MTCA claim[1] against Clark and DHHS, asserting that Clark's failure to investigate the guardian ad litem's documentation concerns, update the MACWIS, and "adequately train, supervise or control" Polky, allowed Ross's harassment and assaults to occur. Pl.'s Compl. ¶¶ 337-51.

Defendants Clark and DHHS seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction on sovereign immunity and qualified immunity grounds and 12(b)(6) for failure to state a claim upon which relief can be granted. Defs.' Mot. at 1.

## DISCUSSION

Defendants DHHS and Clark seek their exit from this case on the grounds of both lack of jurisdiction due to immunity, citing Rule 12(b)(1), and failure to state a claim for which relief may be granted, citing Rule 12(b)(6). The standard for ruling on a 12(b)(1) motion is "virtually identical" to that of a 12(b)(6) motion. *Great River Indus., Inc. v. Pub. Serv. Comm'n of Puerto Rico*, 131 F. Supp. 2d 265, 268 (D. P.R. 2001). I must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Pejepscot Indus. Park v. Maine Cent. R.R.*, 215 F.3d 195, 197 (1st Cir. 2000).

As explained below, Plaintiff's § 1983 claim against DHHS resolves readily under Rule 12(b)(1) based on sovereign immunity, and the § 1983 claim against Clark fails just

---

[1] Plaintiff's Response to Defendants' Motion to Dismiss makes it clear that the only claim against Clark is under 42 U.S.C. § 1983. Pl.'s Response at 2 (ECF No. 15). Consequently, Defendants' or Plaintiff's arguments concerning the statute of limitations and discretionary function immunity under the Maine Torts Act are immaterial to the claim against Clark.

3

as readily under Rule 12(b)(6). *See Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 105 (1st Cir. 2015) (explaining that while jurisdictional questions come first, a federal court may move straight to the merits when that approach is more expeditious).

**A.     DHHS[2]**

DHHS is a "cabinet-level department" whose mission is "to provide health and human services to the people of Maine." 22 M.R.S. §§ 201-02. The Court has previously held "because DHHS is a governmental entity and 'an arm of the State' of Maine" it is entitled to Eleventh Amendment immunity. *Hill-Spotswood v. Mayhew*, No. 14-cv-00206, 2015 WL 403931, at *6 (D. Me. Jan. 29, 2015). DHHS is entitled to Eleventh Amendment sovereign immunity unless the State has done something to waive it. *Id.*; *see also Abdisamad v. City of Lewiston*, No. 2:19-cv-175-LEW, 2019 WL 2552194, at *2 (D. Me. June 20, 2019); *Flood v. Me. Dep't of Corr.*, No. 1:11-CV-270-DBH, 2012 WL 5389533, at *9 (D. Me. Aug. 24, 2012), report and recommendation adopted, 2012 WL 5389529 (D. Me. Nov. 2, 2012).

DHHS argues that the Eleventh Amendment grants it absolute immunity against Ross's claims. Sovereign immunity stems from the Eleventh Amendment of the United States Constitution. *Alden v. Maine*, 527 U.S. 706, 728-29 ("The Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principle . . . ."). Sovereign immunity is an expansive principle that covers not only the state, but also

---

[2] Plaintiff' states that he will seek leave to amend his Complaint to remove DHHS as a defendant but offers no further argument against DHHS's Motion to Dismiss. Pl.'s Resp. at 1. At present DHHS remains a defendant, so I will address its sovereign immunity defense.

4

agencies of the state and other entities that qualify as arms of the state. *Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 (1st Cir. 2009); *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002). When it applies, sovereign immunity bars a claim "regardless of the relief sought." *Poirier*, 558 F.3d at 97 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

Plaintiff has failed to allege facts indicating that DHHS has waived its sovereign immunity. Eleventh Amendment immunity can be waived in three narrow circumstances: "(1) by a clear declaration that [the state] intends to submit itself to the jurisdiction of a federal court or administrative proceeding, (2) by consent to or participation in a federal program for which waiver of immunity is an express condition, or (3) by affirmative conduct in litigation." *New Hampshire v. Ramsey*, 366 F.3d 1, 15 (1st Cir. 2004) (citations omitted). Maine has expressly refused to waive Eleventh Amendment protections. 14 M.R.S. § 8118. That the Maine Civil Rights Act, 5 M.R.S. § 4682(2), and Maine Tort Claims Act, 14 M.R.S. § 8106, contain a "general waiver of sovereign immunity," is of no consequence here. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) ("Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment."). Accordingly, Defendant DHHS is entitled to, and has not waived, Eleventh Amendment sovereign immunity.

B.  **CLARK**

Clark argues that she is entitled to qualified immunity. A preliminary question a court may consider when evaluating a qualified immunity defense is whether the plaintiff

has stated a viable claim. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To state a viable claim against Clark, Ross must plead "a short and plain statement" of his claim that shows he is "entitled to relief." Fed. R. Civ. P. 8(a)(2). This requires "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausible "means something more than merely possible," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012), but is "not akin to a probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Plaintiff has failed to allege a plausible claim against Clark. Supervisors are not liable for the unconstitutional acts of subordinates simply because of their supervisory authority. Instead, their liability must be based on their own acts or omissions, *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 91-92 (1st Cir. 1994), which acts or omissions must reflect "reckless or callous indifference to the constitutional rights of others" and be affirmatively linked to the subordinate's unconstitutional behavior, *id.* at 92. This involves both a sufficiently culpable state of mind on the part of the supervisor (more commonly referred to as a state of mind of "deliberate indifference") and a sufficiently causal relationship between the supervisor's indifference and the subordinate's wrongful conduct. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410-11 (1997) (describing deliberate indifference as "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action"); *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016) (describing causation as an essential element that "contemplates proof that the supervisor's conduct led inexorably to the

6

constitutional violation" (quoting *Hegarty v. Somerset Cnty.*, 53 F.3d 1367, 1380 (1st Cir. 1995)); *Penate v. Hanchett*, 944 F.3d 358, 367 (1st Cir. 2019) ("A plaintiff must allege a strong causal connection, or an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor . . . such that the supervisor's conduct led inexorably to the constitutional violation." (internal quotations and citations omitted)); *see also Manarite ex rel Manarite v. City of Springfield*, 957 F.2d 953, 957 (1st Cir. 1992); *Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir. 1985); *cf. Brown*, 520 U.S. at 406-407. A plaintiff establishes deliberate indifference by showing "(1) grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) [defendant's] failure to take easily available measures to address the risk." *Camilo-Robles*, 151 F.3d at 7.

One way of stating a plausible claim against a supervisor based on the unconstitutional conduct of a subordinate is to allege facts capable of supporting the inference that the supervisor "knew of, overtly or tacitly approved of, or purposely disregarded the conduct." *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994). Alternatively, the plaintiff might allege facts concerning "a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." *Id.* By comparison, isolated incidents and/or the mere failure to perform a supervisory role in perfect compliance with state-imposed, non-constitutional requirements ordinarily will not provide the requisite context needed to infer that the supervisor would be personally liable for the unconstitutional acts of a rogue subordinate. *Id.*

Ross argues that Clark's failure to discover the lack of MACWIS entries leads us ineluctably over the deliberate indifference threshold. *Id.* I disagree. Ross also protests

7

that Clark's supervision and training of Polky was ipso facto insufficient given Polky's alleged misconduct. In terms of Plaintiff's failure to adequately supervise or control claim, Clark is only "liable for the foreseeable consequences" of Polky's conduct if Clark "would have known of it but for [her] deliberate indifference or willful blindness." *Penate*, 944 F.3d at 367 (quoting *Camilo-Robles*, 151 F.3d at 7). Ross points to instances where Clark should have noticed that Polky was not sufficiently updating MACWIS. *Id.* Under Ross's theory, a foreseeable consequence of Clark's failure to investigate missing document visitation schedules and the like would naturally have been Polky's alleged sexual misconduct. Ross invites me to conclude that there is a through line between the discovery of missing file entries and Polky's alleged sexual misconduct toward Ross. *Id.* To consider this argument attenuated is a radical expression of grace.

Ross has not pled any facts to allow an inference that Clark was deliberately indifferent or willfully blind. Further, Ross fails to offer facts suggesting that Polky or DHHS in general had a history of underreporting to MACWIS to hide underlying constitutional violations. While the risk of harm from a rogue caseworker may be high, Ross has not alleged a "known history of widespread abuse." *See Penate*, 944 F.3d at 368; *Maldanado*, 23 F.3d at 582. On the facts alleged, Clark was not "put on notice of behavior which was likely to result in the violation of . . . constitutional rights." *Camilo-Robles*, 151 F.3d at 1 (quoting *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, (1st Cir. 1994)). A lack of MACWIS entries does not show evidence of "known unconstitutional activity" but is "plausibly subject to explanations which would not reasonably trigger further

8

investigation." *Penate*, 944 F.3d at 368. In short, Clark's alleged failures do not amount to a deliberate indifference toward a matter of constitutional dimension.

Ross's claim that Clark failed to adequately train Polky is also wanting. "Failure-to-train claims are typically brought against municipal defendants or other entities, not individuals. Nonetheless, 'a supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.'" *Adams v. Cousins*, No. 06-40117, 2009 WL 1873584, at *11 (D. Mass. 2009). "Claims of inadequate training require proof that the failure to train was a policy or deliberate choice made by the supervisors and that there is a direct link between the Defendants' inaction and the constitutional violation." *Cuebas v. Davila*, 618 F. Supp. 2d 124, 131 (D.P.R. 2010) (citing *Bowen v. City of Manchester*, 966 F.2d 13, 18 (1st Cir. 1992)). As with inadequate supervision, a supervisor's failure to train a subordinate may also support a claim against the supervisor, but only where notice of an underlying constitutional violation warrants training. *See, e.g.*, *Canton v. Harris*, 489 U.S. 378, 388 (1989) (O'Connor, Scalia, and Kennedy, JJ., concurring in part) ("[F]ailure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations . . . ."). Put differently, failure to train may support a Section 1983 claim against a supervisor where the supervisor is "on notice and fails to take corrective action, say, by better training or closer oversight." *Maldonado-Denis*, 23 F.3d at 582.

Ross has failed to allege sufficient facts for his failure to train claim to proceed. Indeed, much of Plaintiff's Complaint and Response (ECF No. 15) to Defendant's Motion

9

to Dismiss are devoted to Polky's alleged actions. Ross does not allege any facts as to how Clark did or did not train Polky, why it is reasonable to believe that training would have prevented the alleged misconduct, or why it is reasonable to assume that Clark is responsible for the training of DHHS caseworkers. Ross's otherwise conclusory allegation of a failure to train does not evince a "deliberate choice to follow a course of action" likely to result in a constitutional violation, *Canton*, 489 U.S. at 388, or support a reasoned inference that it was a failure to train that lead inexorably to the deprivation at issue, *Justiniano v. Walker*, 986 F.3d 11, 22-23 (1st Cir. 2021) (affirming dismissal of failure to train claim where facts alleged no more than the possibility that training might have had a salutary impact).

Under a failure to train claim, there is a "narrow range" of single incident supervisory liability cases. *See, e.g.*, *Connick v. Thompson*, 563 U.S. 51, 63 (2011) ("[I]n a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." (internal quotations and citation omitted)); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997) ("[I]n a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to [train officials]"). This exception does not exist where subordinates can appreciate the constitutionality of their actions without further training. *See Connick*, 563 U.S. at 71 (denying failure to train claim because subordinate-prosecutors would not "obviously make wrong decisions" absent training). Neither party discusses whether that exception is applicable here.

When assessing a failure to train claim the question is "how much and what" training was implemented. *Connick*, 563 U.S. at 48. Ross has not pled what training did or did not occur, what policies DHHS had in place with respect to caseworker-client relationships, or why it is reasonable to infer that Clark's supervisory role made Clark the person within DHHS who bears responsibility for Polky's training. I cannot infer Polky's training was lacking or deficient merely from the accusation of her alleged misconduct.

Ross's allegations do not support a finding that Clark bears personal liability for Polky's alleged misconduct and as such, Ross has failed to state a claim against Clark.

## CONCLUSION

For the foregoing reasons, Defendants Clark and DHHS's Motion to Dismiss (ECF No. 8) is **GRANTED**.

SO ORDERED.

Dated this 22nd day of October, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge